Robert W. Symon et al., Appellants *v.* Charles R. Tomljanovic, Appellee.

Argued May 4, 1982, before President Judge CRUMLISH, JR., and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*W. Patrick James,* for appellants.

*Russell J. Heiple,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., January 14, 1983:

Cambria County Common Pleas Court, by order, voided an ordinance adopted by the Johnstown City Council. We reverse.

Johnstown City Council (Council) enacted Ordinance No. 4195[1] (ordinance) on July 9, 1980, which

---

[1] Ordinance No. 4195 reads:

Except that no contract be entered into for providing services involving city employees, equipment, or materials outside the Municipal limits of the City of Johnstown un-

amended Section 603 of the City's Administrative Code.[2] Section 603 had vested in the Mayor the power of contract administration. Mayor Tomljanovic (Mayor) vetoed the ordinance and Council subsequently overrode his veto. The Mayor then brought an action under the Declaratory Judgment Act[3] to determine whether Council had the power to adopt and enact the amended ordinance.

The court held that, under the Optional Third Class City Charter Law[4] (Law), the Mayor's power to "execute" contracts included all phases of the contractual process. It then ruled that the ordinance infringed on an exclusively executive function.

The issue before us is whether Council exceeded its authority by enacting this ordinance. Its resolution of this issue, as it applies to a legal instrument, hinges on the definition of "execute." Section 1903 of the Statutory Construction Act[5] states:

---

less Council approves the terms of any such proposed Agreement. Said approval of Council shall not be necessary in those circumstances when an emergency condition exists. Emergency is defined as any unforeseen combination of circumstances, natural or otherwise, that requires immediate action to protect property or human life.

The entire cost for providing services outside the City Municipal Boundaries shall be born by that municipality or municipalities receiving such services.

[2] Section 603 reads:

SECTION 603. *Contracts.* Contract administration for the City, including but not limited to authority as to preparation of specifications, letting of bids, award of contracts and payment of bills, heretofore vested in Council under Article XIX of the Third Class City Code of Pennsylvania, shall be vested in the Mayor and the Department of Administration to be exercised in accordance with procedures adopted by the Mayor.

[3] 42 Pa. C. S. §7531.

[4] Act of July 15, 1957, P.L. 901, 53 P.S. §41101.

[5] 1 Pa. C. S. §1903.

(a)   Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as to have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

Execute means to "perform what is required to give validity to."[6]   In this context, "execute" clearly means to discharge the ministerial duties relating to a contract.   The common pleas court erred by expanding this definition.

Section 41407 of the Law[7] states:

The legislative Power of the city shall be exercised by the city council except as may be otherwise provided by general law.

The general law only vested in the Mayor the power to "execute" contracts, which does not include the express power of negotiation.   Council, therefore, has the authority to amend its own properly-enacted ordinance.[8]

Reversed.

## Order

Order No. 1980-4442 of the Court of Common Pleas of Cambria County, dated June 22, 1981, is hereby reversed.

---

[6] Webster's Third International Dictionary 794 (1976).

[7] 53 P.S. §41407.

[8] 53 P.S. §41303:

Each city governed by an optional form of Government pursuant to this act shall . . . have full power to:

. . . .

(3)   . . . adopt, amend, and repeal such ordinances and resolutions as may be required for the good government thereof."