Peters Township School District, a third class school district, Appellant *v.* Peters Township Federation of Teachers, AFT Local 3431, et al., Appellees.

Argued October 9, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*James B. Brown,* for appellant.

*Stephen H. Jordan*, with him, *Ronald G. Backer, Rothman, Gordon, Foreman and Groudine, P.A.*, for appellees.

OPINION BY JUDGE CRAIG, November 27, 1985:

Under the terms of the Public Employe Relations Act[1] which provide, in effect, that the Act's impasse resolution procedures are not exhausted earlier than "twenty days after mediation has commenced," does "mediation" commence with the appointment of a mediator or with the first actual mediation session?

Secondly, does that language in section 802 of the Act[2] require, for its fulfillment, twenty days of actual mediation activity or, instead, the expiration of a period of twenty calendar days?

Peters Township School District has appealed from the refusal of the Court of Common Pleas of Washington County to end a strike by the Peters Township Federation of Teachers (union), after the court considered the district's request for a preliminary injunction under section 1002 of the Act,[3] which prohibits public employee strikes during the pendency of collective bargaining procedures set forth in sections 801 and 802.

With no factual dispute present, the pertinent chronology is as follows:

May, 1985—The district and the union, newly certified as bargaining representative in the preceding month, began negotiations toward a new agreement;

June 18, 1985—The Pennsylvania Board of Mediation appointed Andrew Zerishnek as

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

[2] 43 P.S. §1101.802.

[3] 43 P.S. §1101.1002.

mediator for the dispute, pursuant to an earlier joint request;

June 30, 1985—The previous collective bargaining agreement, with a predecessor union, expired;

August 23, 1985—The first actual mediation session was conducted by the parties with the mediator;

August 26, 27, 28, 1985—The parties held three additional sessions with the mediator, without achieving agreement; and

August 29, 1985—The union went on strike, having asserted its refusal to return to fall classes without a contract.

The district filed its complaint and motion for preliminary injunction in the common pleas court on September 3 and, after two days of hearing, Judge GLADDEN issued his denial of the district's request that he order the union back to work until a total of twenty sessions with a mediator had been held. The trial judge construed the statutory section by holding that mediation commenced the day the mediator was appointed and became available to respond to the summons of either party; he also reasoned that the twenty-day period stated in section 802 means simply twenty calendar days of actual mediation. His opinion emphasized the scarcity of negotiating sessions between the parties throughout the entire period before the strike commenced—only seventeen negotiating sessions in a period of 145 days.

After the district appealed that denial to this court, it sought a special injunction under Pa. R.A.P. 1732(b), asking that a single judge of this court order a resumption of work for the unexpired days of the period, pending a final decision of this court. Because an award of that interim special relief by one judge

would have been equivalent to a final appellate resolution of the appeal by the entire court, the duty judge denied the interim request and advanced the case for argument before the court en banc at regular appellate sessions two and one-half weeks thereafter. At argument, counsel informed the court that the parties had reached an agreement, and that the teachers had returned to work on October 7, 1985, two days before the argument session.

## 1. The Issue of Mootness

Although the matter involved in this appeal is undeniably moot, the court's considered determination is to decide this appeal nevertheless because it involves a question importantly affecting the public interest which could otherwise escape review repeatedly. *Colonial Gardens Nursing Home, Inc. v. Bachman,* 473 Pa. 56, 373 A.2d 748 (1977). In *Colonial Gardens,* the Pennsylvania Supreme Court considered and decided a moot issue, to avoid a situation in which "preliminary injunctions interfering with administrative proceedings for limited periods of time would escape review." 473 Pa. at 59, 373 A.2d at 750. Similarly, this case involves a request for a labor injunction dealing with a requirement of limited duration which is important to the public interest and, as illustrated by the history of the case, could evade review in like situations in the future.

## 2. The Commencement of Mediation

Section 801 provides that, if a dispute or impasse exists after a reasonable period of negotiation, the parties may voluntarily submit to mediation, but in any event, if the impasse continues, both parties shall immediately call in the service of the Pennsylvania Bureau of Mediation. Section 802 provides:

> Once, mediation has commenced, it shall continue for so long as the parties have not reached an agreement. If, however, an agreement has not been reached within *twenty days after mediation has commenced* or in no event later than 130 days prior to the 'budget submission date,' the Bureau of Mediation shall notify the board of this fact. Upon receiving such notice the board may in its discretion appoint a factfinding panel which panel may consist of either one or three members. (Emphasis added.)

Although, as the statute indicates, factfinding is optional, mediation is undoubtedly mandatory. *United Transportation Union v. Southeastern Pennsylvania Transportation Authority*, 22 Pa. Commonwealth Ct. 25, 32, 347 A.2d 509, 512-13 (1975).

A panel of this court reviewed the question of when mediation commenced in *Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union*, 34 Pa. Commonwealth Ct. 71, 383 A.2d 954 (1978). The record in that case indicated that the bureau appointed the mediator on July 8, 1976, and that the first mediation session occurred on November 16 of that year. This court stated:

> .. Mediation did not commence until November 16, 1976. . . .

34 Pa. Commonwealth Ct. at 84, 383 A.2d at 961. Hence, the panel's holding was that the first mediation session constituted the commencement of mediation which started the running of the twenty days.

The wording of the statute is not ambiguous. By providing that the twenty days shall run only from when "mediation" has commenced, it clearly does not refer to the mere appointment, designation, assignment or availability of the mediator, which are matters preliminary to mediation, not constituting mediation in itself. As the district points out, Black's

Law Dictionary 885 (5th ed. 1979) defines mediation as "the act" of a third person in persuading parties to adjust or settle a dispute, a matter which is accomplished by "action" of the intermediary. The familiar principle applies: When the words of a statute are unambiguous, a court cannot ignore its literal meaning under the pretext of pursuing unexpressed policy. 1 Pa. C. S. §1921(b).

The strongly declared policy of the statute is that the parties shall pursue mediation toward settlement of the dispute. The appointment of a mediator in itself does absolutely nothing toward settlement of a dispute. There is no reason to believe that the legislature intended that a time limit on mediation should begin with a nonproductive preliminary to mediation.

The union contends that the record here demonstrates that, in view of the workload of state mediators, and the small number of them, the normal likelihood is that no mediator will be available for actual work for a considerable period of time after the appointment of one. Accordingly, the union argues that the legislature could not have intended that the "rights" of public employees to commence a work stoppage should be thus linked to the difficulties of making a mediator available. The union hypothesis is that the legislature could not have intended unduly to delay reaching the point of a strike. On the contrary, the entire tenor of these sections is that the legislature fully intended to defer a strike at least until after the occurrence of substantial negotiation and mandatory mediation.

This court therefore reaffirms our determination in the *Port Authority* case that, under section 802 of the Act, "mediation has commenced" only when some mediation has occurred by reason of the parties getting together with a mediator in an actual mediation session.

### 3. The Twenty Days Requirement

In the *Port Authority* case, this court declined to decide the precise meaning of the reference to twenty days because articulation of that definition was not necessary for the decision. This court's panel specifically stated:

> We need not decide whether this means twenty
> days of actual mediation or the mere passage
> of twenty days from the start of mediation.

34 Pa. Commonwealth Ct. at 84, 383 A.2d at 961. After reviewing the section, we agree with the trial judge here that, concerning the reference to twenty days, the Act means what it says—that a time period of "twenty days after mediation has commenced" refers to the expiration of a period of twenty calendar days; the statute does not speak in terms of pursuing twenty days *of* mediation. The section identifies the starting point, discussed above, and simply refers to the passage of twenty days after that point. Although, as the district contends, mediators and parties may find it difficult to reassemble even after they have conducted one actual mediation session, the occurrence of that one session at least demonstrates that any period of total unavailability of a mediator has ended, so that a potentiality for an effective course of mediation is present.

By thus declaring this court's interpretation of the statute's meaning in accordance with its plain terms, our decision should serve as a guide to public employers and public employee unions. Because the mediation period begins only when the parties get together with the mediator, unions concerned with time factors are admonished to pursue mediation with vigor and promptness. Similarly, our interpretation with respect to the twenty-day period admonishes all parties, particularly public employers, that they

should make full use of the opportunity for mediation once it has commenced by the arrival of a mediator on the scene.

ORDER

Now, November 27, 1985, the order of the Court of Common Pleas of Washington County, dated September 10, 1985, is reversed.